## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01364

JOT LABS, LLC,

               Plaintiff,

v.

ONEBY COFFEE, INC.

               Defendant.

---

## DEFENDANT ONEBY COFFEE, INC.'S
## MOTION TO DISMISS JOT LABS, LLC'S FIRST AMENDED COMPLAINT

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant OneBy Coffee, Inc. ("OneBy"), through their undersigned counsel, hereby moves to dismiss the First Amended Complaint ("FAC") of Plaintiff Jot Labs, LLC ("Jot") in its entirety.  This motion is made on the grounds that Jot's allegations in the FAC, including the exhibits, do not support its three claims.

Jot's trade dress claim fails because Jot does not identify any protectible trade dress.  The purported trade dress is not distinctive, has no secondary meaning and is functional.  Further, Jot has not alleged facts to support a likelihood of confusion because, among other reasons, there is an absence of similarities between the parties' packaging, branding and website.  The alleged similarities are generic, unprotectable phrases like "refrigerate after opening" or "ingredients: water, coffee" and elements like a curved typeface.

Jot's two unfair competition claims (one under Colorado common law and one under the

Lanham Act) fail for the same reasons as its trade dress claims.

This motion is based upon the memorandum of points and authorities and supporting papers, including the affidavit of Charles E. Weir and the exhibits attached thereto, and such other materials, legal memoranda and oral argument as may be presented.

Dated: July 15, 2021                    MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ *Charles E. Weir*
_____
       Charles E. Weir
       2049 Century Park East, Suite 1700
       Los Angeles, CA 90067
       Telephone: (310) 312-4000
       Facsimile: (310) 312-4224
       Cweir@Manatt.com

       Attorneys for Defendant,
       OneBy Coffee, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**     **INTRODUCTION**

Cloaked as an effort to protect trade dress, this case is nothing more than a meritless

effort to use litigation to harm a fledgling competitor in the concentrated coffee market.  Jot's

initial complaint claimed OneBy violated Jot's trademark rights.  This claim was brought despite

the fact that Plaintiff is called "Jot" and uses a mark that includes its name and a rabbit-shaped

coffee stain while Defendant is called "OneBy Coffee" and uses a completely different mark.

The absence of any colorable trademark claim was obvious: the marks are completely unrelated.

Nevertheless, to burden OneBy, Jot brought the claims and forced OneBy to incur the expense of

a motion to dismiss only to abandon the claims the day its opposition was due.  Still undeterred

in its efforts to saddle a new competitor with litigation expenses, Jot filed the FAC and continues

with trade dress claims that have no more merit than its now abandoned trademark claims.

Jot claims OneBy "slavishly copied" Jot's product packaging, design and marketing

materials.  Just like the trademark claims, where there was no use of Jot's trademark at all, the

very pictures in the FAC make plain that OneBy is not using Jot's packaging, bottling or

marketing.  The bottles themselves are different sizes, shapes and colors.  The labels contain

different trademarks, wording, printing and markings.  OneBy's website is different from Jot's

and does not use the Jot trademark, or anything similar, in any way.  Despite the obvious

differences between the two products' design, packaging and marketing, Jot reaches for absurd

unactionable similarities to try to keep its meritless claims alive.

For example, Jot now claims that the heights of the bottles are really "identical" if you

ignore their tops.  Other claimed "similarities" include different words in different font displayed

in what Jot claims is a similar "arched top line and dome-shape" pattern – an assertion that is

again belied by the pictures in the FAC.  Jot also claims "copying" of "refrigerate after opening" instructions, ingredients of "coffee and water" and statements that both companies are from Boulder, CO.  For the website, Jot points a chart that shows discount pricing for larger orders and that on both sites the "Product name is upper left corner (left column)."

Not only are there no similarities between the packaging and website, there is no protectable trade dress alleged.  Protectable trade dress cannot be functional and must be distinctive, whether inherently so or by virtue of developing secondary meaning in the market place.  None of the allegedly similar elements meet this standard.  There is simply nothing distinctive about the bottom portion of Jot's bottle being 5.5 inches or its label displaying a line of text in an arch.  Moreover, phrases such as "refrigerate after opening" or ingredients are also merely functional and not distinctive as they are mandated by food labeling laws.

Finally, there are no facts alleged that establish a likelihood of confusion related to the parties' respective trade dress.  The most important element in analyzing the likelihood of confusion for trade dress claims is the similarity of the purported trade dress.  The pictures in the FAC reveal that the products' packaging, bottles and websites are not similar at all.  The parties' trademarks are prominently displayed on the bottles and websites, eliminating any confusion about the origin of the products.  Jot's trade dress claims must be dismissed.[1]

Jot does not have a monopoly on concentrated coffee products and cannot try to create one via trade dress claims.  This case is merely an effort by Jot to bully a new competitor out of the market by trying to hamstring it with the burden of litigation.  This case should be dismissed.

---

[1] Jot's unfair competition under the Lanham Act and under Colorado common law have the same elements as the trade dress claims and fail for the same reasons.

## II.   JOT'S COMPLAINT AND JUDICIALLY NOTICEABLE FACTS

### A.   Procedural History

Jot filed its initial complaint on May 18, 2021.  Jot brought claims for trademark infringement, trade dress infringement and two unfair competition claims.  (Docket No. 1, Compl. ¶¶ 39 -56).  Following a failed meet and confer between counsel in which OneBy detailed its basis for its initial motion to dismiss, OneBy was forced to file its motion on June 10, 2021.  (Docket No. 14).  The day Jot's response was due, it filed the FAC.  The FAC withdraws the obviously flawed trademark infringement claim, removes certain allegations that undercut Jot's claims and adds a few new allegations regarding Jot's bottle and label.  (FAC ¶¶ 18-40).

### B.   History of the Parties and Their Products

Jot and OneBy are both new companies that sell concentrated coffee products.  (FAC ¶ 2).  Jot began to market and sell is products on March 25, 2020, a little over a year before initiating this lawsuit.  Less than nine months later, OneBy began to market and sell its concentrated coffee on December 14, 2020.  (*Id.* at ¶ 5).

Jot alleges it has a "proprietary extraction process" to produce liquid coffee that is 20 times more concentrated than a regular cup of coffee.  (*Id.* at ¶¶ 18-19).  Jot also alleges that its product is to be consumed one tablespoon at a time.  (*Id.*).  The FAC contains a number of paragraphs and attaches four articles making positive claims about Jot's coffee, including that it tastes good and uses fair trade beans.  (*Id.* at ¶ 21 – 24; Exs. 1, 2, 3, 4).  All of the articles were published within the first few months after Jot's product launch and, for at least three, Jot appears to have paid some sort of commission or fee for the article.  (Ex. 1., p. 1 (stating that the author receives revenue for purchases of Jot); Ex. 2, p. 1 (stating that the author may receive commission payments for Jot purchases)); Ex. 3, p. 5 ("Fast Company may receive revenue for

some links to products on our site.").[2]

C.      The Parties' Trademarks

In the FAC, Jot attempts to distance itself from the parties' trademarks.  Jot removed the trademark claims, its registrations and all mentions of its marks.  The reason is simple: the parties' trademarks are completely different.  (Compl. ¶¶ 34, 35, FAC at ¶ 38).  As set forth below, Jot cannot run from the fact that the parties' trademarks are prominently displayed on each parties' bottle, packaging and website.  (FAC ¶¶ 38b, 38c, Weir Decl. Exs. 2, 4).

D.      The Parties' Product Packaging

The FAC includes photos of the parties' respective bottles and labels. (*Id.* at ¶ 38b).

 

The bottles both display each party's trademarks on the front. (*Id.*).  The bottles are different sizes – Jot's is 200 ml and OneBy's is 250 ml.  (*Id.* at ¶¶ 38b, 39a).  The pictures show that the size and shape of the cap are different, but Jot alleges that both bottles are sealed with a "dark brown sealed cap." (*Id.* at ¶ 39b).  Jot alleges that you can fit both bottles "in the palm of your hand."  (*Id.*).  The bottles are allegedly different colors, but Jot claims they are the same color when Jot's bottle is filled with product.  (*Id.*)  In the original complaint, Jot admitted that the

---

[2] The fourth article is from an online blog called "thedieline.com."  Unlike the other three, the article and the complaint are silent as to whether the blog post was unsolicited or paid for by Jot.

bottles contained different volumes and are different heights.  (Compl. ¶ 34).  Jot now alleges

that the bottles "have and identical body height (not including the neck and cap)." (FAC  ¶ 38b).

There are no allegations about why measuring only a part of the bottle is relevant.

While the fonts are also different, Jot alleges they are actually similar because they are

both "stylized fonts."  (*Id.*).  In an effort to concoct what Jot claims is a "striking similarity" in

packaging, Jot identifies five portions of packaging text in a chart.  For each element, the text is

plainly different.  The elements all relate to basic instructions for use, ingredients, refrigeration

requirements, product volume and distribution location.  (*Id.* at ¶ 39a).  There is no allegation

that any of OneBy's statements on its packaging are false.

In the FAC, Jot adds allegations about text on the bottles being in a "arched top line" and

"dome-shape formed with the remaining text."  (*Id.* at ¶ 38a).  Jot places a dome shape around

the two labels in an apparent effort to show some sort of similarity in shape.  As seen below, if it

shows anything, it simply further illustrates the absence of similarity.



(*Id.*).  Not only is the text and pictures on each parties' bottle entirely different, but the text does

not even match the superimposed "dome shape."  It is not even close.  (*Id.*).

Other factual allegations related to Jot's product packaging were limited to the opinions

expressed in three attached articles commenting that the bottle is "sprightly", "sleek",

"handsome."  Others stated that the color combinations were "pleasing," the font was "calming"

and "energetic" and the opening of the bottle is "clean and pours easily."  (*Id.* at ¶¶ 21-24).

Despite making a couple conclusory assertions, Plaintiff alleges no facts suggesting its "small brown bottle" or its packaging have acquired secondary meaning in the market. (*Id*.).

> E.      The Parties' Websites and Pricing

Jot does not include either parties' full webpage as screen shots or exhibits to the FAC. Despite providing virtually no detail about its website, Jot makes the conclusory assertion that the overall "look and feel" of its website has acquired "secondary meaning." (*Id.* at ¶¶ 27, 28). With respect to OneBy's website, Jot does not allege that OneBy uses any Jot trademarks or mentions Jot in any way. Like the packaging claims, even a cursory review of the websites reveals an absence of similarities. Jot's website can be found at https://jot.co and an archived version of its website from January 26, 2021 can be found at https://web.archive.org/web/20210126012002/https://jot.co. (Weir Aff. ¶3). OneBy's website can be found at https://oneby.co and an archived version from March 27, 2021 can be found at https://web.archive.org/web/20210327202623/http://www.oneby.co. (Weir Aff. ¶5). Screen shots of the top of the landing page of the archived websites are below.

 

(Weir Aff. Ex. 2, 4).[3]

Despite the fact that the websites include plainly different content, and that OneBy's site contains no mention of Jot or its trademarks, Jot claims the websites are "nearly identical" and

---

[3]  A complete version of the archived and current websites can be found at the web links indicated. Screen shots of the opening pages are provided for ease of reference.

points to a chart comprised of supposed similarities.  (*Id.* at ¶ 39c).  The purported similarities are generic layouts, words and phrases.  For example, on the "purchase page" Jot claims (as of April 18, 2021) that both websites used "2 columns, featuring a cream-colored column at left and a white column at right" and "product name is upper left corner (left column)."  (*Id.*).  Jot also complains that OneBy uses a button that says, "Buy Now."  (*Id.*).  The partial screenshots of Jot's and OneBy's "purchase pages" from before April 18, 2021 reveals that the language, font, and pricing contained in the websites are not the same.[4]  (*Id.*).

     F.    <u>Jot's Causes of Action</u>

Based on the above allegations, Jot brings claims for trade dress infringement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Unfair Competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Common Law Unfair Competition under Colorado law.  Jot seeks a laundry list of injunctive relief, the effect of which would be to shut down OneBy for some period of time.  (*Id.* at p. 23).  Jot does not allege any amount of damages, claiming instead that its damages are "unclear."  (*Id.* at ¶ 8).

## III.    <u>ALL OF JOT'S CAUSES OF ACTION MUST BE DISMISSED</u>

A complaint must have a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content

---

[4]  Further evidence that this suit is only designed to harass OneBy, Jot has to qualify its complaint with the April 18, 2021 date because the chart elements of OneBy's "purchase page" about which it complains are no longer on the site.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Though a court must accept all well-pleaded allegations as true for purposes of a 12(b)(6) motion, the Court need not accept as true allegations that are conclusory in nature.  *Erikson v. Pawnee County Bd. Of County Comm'rs*, 263 F.3d 1151, 1154-1155 (10th Cir. 2001).  "Conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-1110 (10th Cir. 1991).

In evaluating the sufficiency of a complaint, the Court may look at the complaint itself and any properly considered documents, including those attached as exhibits.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).  "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).  Further, where a document is central to a plaintiff's complaint and is referred to in the complaint, the court may consider an indisputably authentic copy of the document in resolving the motion to dismiss.  *Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253-54 (10th Cir. 2005); *Dean Witer Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001).  Here, Jot makes the websites of the parties central to its claims.  The Court can and should consider the actual content of those websites in this motion.[5]

Jot's complaint does not plausibly state a claim for relief.  Indeed, as discussed herein, the allegations in the FAC, its exhibits and the documents referenced in the FAC establish that each of Jot's causes of action should be dismissed.

---

[5]  The existence of a website and the content that it displays is also subject to judicial notice. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that judicial notice of the content of a website is common and proper).

A.     Jot's Trade Dress Claim Fails

To obtain relief for trade dress infringement under § 43(a), a plaintiff must plead and prove: (1) the trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) there is a likelihood of confusion among consumers as to the source of the competing products; and (3) the trade dress is nonfunctional.  *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016); 15 U.S.C. § 1125(a)(3).  In addition, a plaintiff must "articulat[e] the specific elements which comprise its distinct dress."  *Forney Industries, Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1252 (10th Cir. 2016) (noting that a purported trade dress must "satisfy the articulation requirement for a protectable mark").  Jot fails to properly allege multiple required elements of its trade dress claim.

1.     Jot Does Not Specifically Identify its Trade Dress

A plaintiff must specifically identify any claimed trade dress.  There are multiple reasons for this requirement, including providing notice to the market as to the scope of the plaintiff's trade dress rights.  *Forney Industries, Inc.*, 835 F.3d at 1252.  A plaintiff seeking trade dress protection of unregistered trade dress must do more to specifically identify the elements of its trade dress than point to its "overall look."  *Id.*  A plaintiff "needs to clearly define the specific elements that constitute the trade dress; a general description of the site is insufficient."  *Bryant v. Matvieshen*, 904 F.Supp.2d 1034, 1046 (E.D. Cal. 2012); *Salt Optics, Inc. v. Jand, Inc.*, 2010 WL 4961702, at *5(C.D. Cal. Nov. 19, 2010) ("[M]ere cataloguing of [the] website's features does not give defendants adequate notice of a plaintiff's trade dress claim.").

Jot does not identify with any specificity what it is claiming constitutes protectable trade dress.  Jot merely alleges that it spent money on promotion and that "the overall look and feel of its products and website (collectively, the "Jot IP") have become associated in the minds of the

relevant consuming public with Jot Labs." (FAC. ¶ 27). The FAC is virtually devoid of any information about Jot's website. Jot did not even include screen shots of its full website. The only actual content from the website relates solely to its purchase page, which identifies sales offerings of one, two or three bottles. (*Id.* at ¶ 38c). While Jot includes a picture of its bottle, its height and volume, and the label, it provides no detail about which elements of its bottle or labeling constitute its distinct trade dress or why. (*Id.* at ¶¶ 38, 39). At best, Jot's description of its bottle is nothing more than a cataloguing of items contained on the label that case law rejects. *Salt Optics, Inc. v. Jand, Inc.,* 2010 WL 4961702, at \*5. Jot's allegations are exactly the type of allegations that have been held to be insufficient to identify trade dress.[6]

2.    There is Nothing About Jot's Purported Trade Dress That is Distinctive

To satisfy the distinctiveness requirement, plaintiff must show "either (a) that [the] trade dress features (or feature) are inherently distinctive because their intrinsic nature is such as to almost automatically tell a customer that they refer to a brand, or (b) that the trade dress has become distinctive through acquisition of secondary meaning, so that its primary significance in the minds of potential consumers is no longer as an indicator of something about the product itself but as an indicator of its source or brand." *Savant Homes, Inc.*, 809 F.3d at 1147 (quoting *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995) (quotations omitted)). Only product packaging can be inherently distinctive, product design cannot be inherently distinctive. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 2016

---

[6] In attempting to concoct similarities between Jot and OneBy's packaging, Jot does list more specific elements from its website and bottle. But, Jot appears to be claiming trade dress protection for elements beyond those specific words or phrases. And, more importantly, as discussed below, none of the supposed similarities between certain discrete phrases are protectable elements.

(2000) (holding a product's design is only distinctive upon a showing of secondary meaning).

The Supreme Court has considered the issue of distinctiveness according to five categories: generic, descriptive, suggestive, arbitrary and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Suggestive, arbitrary or fanciful trade dress may be inherently distinctive. Descriptive trade dress is not inherently distinctive, but may acquire distinctiveness through secondary meaning. *Id.* Generic trade dress is never distinctive. *Id.* "Because a generic trade dress or trademark can never be source-identifying, it receives no protection." *Savant Homes, Inc.,* 809 F.3d at 1148. The Tenth Circuit has stated that it may be useful to also consider the following in analyzing inherent distinctiveness: whether the trade dress is (1) "a common basic shape or design," (2) "unique or unusual in a particular field," and (3) "a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." *Forney Industries, Inc.*, 835 F.3d at 1246 (citing *Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977)).

"Conclusory use of the word 'distinctive,' absent any factual allegations, is insufficient to adequately allege inherent distinctiveness." *Domo, Inc. v. Grow, Inc.*, 2018 WL 2172937, at *3 (D. Utah 2018). Jot does not allege any facts that support the distinctiveness of its purported trade dress. Indeed, its allegations establish the opposite.

Jot claims OneBy copied its "product packaging" and "product design." For its "product design" Jot points to its bottle's height, shape and color. (FAC ¶ 38b.). Jot also points to the "stylized font" on the bottle. (*Id.*). Since the bottle is the "product design" it cannot be inherently distinctive; Jot must allege facts that establish its bottle has developed secondary meaning in the market. *Wal-Mart Stores, Inc.*, 529 U.S. at 2016. Jot does not even attempt to allege facts that

would establish its small round bottle has been elevated such that the "primary significance in the minds of potential consumers is no longer as an indicator of something about the product itself but as an indicator of its source or brand." *Savant Homes, Inc.*, 809 F.3d at 1147.[7]

Not only does Jot not allege secondary meaning related to its bottle, nothing about Jot's bottle, packaging or website is inherently distinctive. Jot fails to allege why any element of its bottle, packaging or website is distinctive in any way, let alone sufficient to be suggestive, arbitrary or fanciful such that it identifies the producer. Jot's bottle shape and design—brown, glass, and cylindrical—is nothing beyond common and basic. Moreover, Jot does not, because it cannot, allege that there is anything unusual about the use of such a bottle in the field of concentrated coffee. A standard round brown bottle of 5.8 inches and holding 6.8 ounces is not unique and thus is not eligible for trade dress protection.

Courts have repeatedly rejected similar efforts to protect bottles as distinct trade dress. *See e.g. Sazerac Co. v. SKYY Spirits, Inc.*, 95 F.3d 53 (5th Cir. 1996) (concluding a blue, glass vodka bottle was not inherently distinctive); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114 (2d Cir. 2001) (finding no error in the trial court's determination that a 1.5-liter clear, ribbed, plastic water bottle was not distinctive); *E & J Gallo v. Proximo Spirits, Inc.*, 2012 WL 273076 (E.D. Cal. 2012) (citations omitted) (finding no inherent distinctiveness in a trapezoid-shaped tequila bottle, noting that "a trapezoid is the sort of intuitive, ordinary geometric shape that courts generally regard [ ] as non-distinctive"); *cf. Globefill Inc. v. Elements Spirits, Inc.,* 2016 WL 8944644 (C.D. Cal. 2016) (finding a tequila bottle to be inherently

---

[7] While there is no set amount of time required for secondary meaning to develop, courts do recognize that the amount of time a product has been on the market is an important factor. For example *Sazerac Co. v. SKYY Spirits, Inc.*, 95 F.3d 53 (5th Cir. 1996) the Court rejected Skyy's claim that its blue vodka bottles had developed secondary meaning. Part of the rationale was the fact that Skyy had only been marketing that product for two years.

distinctive where the bottle was unusually skull-shaped).

Nor are there any allegations to support the distinctive nature of any of the label text Jot complains about. (FAC ¶ 39a). The identified similarities between the packaging are plainly generic phrases or instructions. For example, there is nothing distinctive about including the phrases "refrigerate after opening" or "Ingredients: Water, organic coffee" on a label. The identified similarities between the texts' formatting are also generic. There is nothing distinctive about lettering in "cafe-latte-black-white color." (FAC ¶ 21). Colors are not distinctive. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000) ("[W]ith respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive."). Similarly, Jot claims that both bottles present "arched" text in a "dome-shape form." There is nothing distinctive about this purported pattern. *Savant Homes, Inc.*, 809 F.3d at 1147 (holding that an element is "inherently distinctive because [its] intrinsic nature is such as to almost automatically tell a customer that [it] refer[s] to a brand.").

Claims related to Jot's website suffer from the same problems. There is nothing in the FAC explaining why any aspect of Jot's website is distinctive. Again, as with the packaging, the elements Jot complains about are plainly generic. For example, Jot complains about background colors ("a cream-colored column at left and a white column at right"); location of product name ("Product name in upper left corner"); and a "Buy Now" button with a yellow background. There are no allegations explaining how a button that says "Buy Now" is distinctive or why anyone would attribute the existence of that element to Jot.

As above, given the absence of any inherent distinctiveness, Jot would have to allege facts that establish the existence of secondary meaning in elements of its purported trade dress. *Savant Homes, Inc.*, 809 F.3d at 1147. Jot alleges no facts that establish any purported Jot trade

dress element has developed secondary meaning in the marketplace.

3.      <u>Jot's Purported Trade Dress is Functional</u>

Jot also fails to allege that its purported trade dress is nonfunctional.  "[T]he issue of functionality turns on whether protection of the combination would hinder competition or impinge upon the rights of others to compete effectively."  *Hartford House Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1273 (10th Cir. 1988).  Jot is seeking to accomplish exactly what trade dress law seeks to preclude with the functionality element: a monopoly in the concentrated coffee space via trade dress law.

Concentrated coffee is a food product.  As such, the FDA requires certain disclosures on the product label.  This includes, among other items, the ingredients, the amount of the product in the packaging, and the location of the producer.  21 C.F.R § 101.3(a)("The principal display panel of a food in package form shall bear as one of its principal features a statement of the identity of the commodity."); 21 C.F.R § 101.5(a)("The label of a food in packaged form shall specify conspicuously the name and place of business of the manufacturer, packer, or distributor."); 21 C.F.R § 101.7(a)("The principal display panel of a food in package form shall bear a declaration of the net quantity of contents.").  For perishable items that must be refrigerated after opening, the label should so state.  These elements are some of the "similarities" that Jot points to for its trade dress infringement claim.  Jot cannot seek trade dress protection for label content required by law.  Moreover, instructions on how the product works – i.e. use one tablespoon with 8 oz of some liquid – are also functional.  (FAC ¶ 39a).

The bottles themselves are also functional as they serve as a container for the product.  "[P]roduct features such as a bottle design or choice of label color are functional and not protectable if they are the reason the device works, irrespective of available alternative designs,

16

or if one maker's exclusive use of the feature would put competitors at a significant disadvantage." *Laboratorios Pisa S.A. De C.V. v. PepsiCo, Inc.*, 2021 WL 783854, at *2 (S.D. Tex. Feb. 27, 2021). Barring OneBy from putting its product in glass bottles would put it at a competitive disadvantage. Jot alleges nothing to the contrary.

Jot also fails to allege that the website elements complained of are nonfunctional. For example, the "Buy Now" button is a plainly functional component of the sales process. "Simply making a conclusory statement that its 'features constitute a design choice not driven solely by function' is not sufficient to meet the *Iqbal* standard under Rule 12(b)(6)." *Domo, Inc.*, 2018 WL 2172937, at *5.

        4.       <u>Jot Has Not Alleged a Likelihood of Confusion</u>

Jot has failed to plead a likelihood of confusion regarding its purported trade dress. "[A] plaintiff must show that potential customers are likely to be confused by the defendant's trade dress into thinking that the defendant is affiliated, connected or associated with the plaintiff or that the defendant's goods originated with, or are sponsored or approved by the plaintiff." *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1503. In determining whether a likelihood of confusion exists, the Tenth Circuit uses the same six-factor test it uses to analyze the likelihood of confusion element for trademark. *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007). The six factors are: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002). While no one factor is dispositive, the degree of similarity is the most determinative. *Affliction Holdings, LLC v. Utah Vap or Smoke*, LLC, 935 F.3d 1112,

1115 (10th Cir. 2019) (holding that "the degree of similarity is the most important factor").

A majority of these factors, including similarity, are suitable for analysis at the motion to dismiss stage. *Motherlode Provisions, LLC*, 2017 WL 11547020, at *4 (holding that similarity of the marks, similarity of the products, manner of marketing, degree of care exercised by purchasers and the strength of the mark can all be assessed at the motion to dismiss stage).

Jot does not allege any facts to support its conclusory assertion of potential confusion regarding its bottle, label or packaging.  Given the lack of similarity between the packaging and branding, Jot cannot plausibly allege a likelihood of confusion regarding its trade dress.  The two bottles and labels are not even remotely similar.  The labeling, text, and bottle size and shape are different.  (FAC  ¶¶ 38, 39).  Importantly, as the pictures reveal, the dominant image on both bottles is the parties' respective trademarks.  (FAC at ¶ 38b).  Having dismissed their trademark claims because the two marks are not remotely similar and no consumer could be confused by them, it strains logic to believe that consumers would see bottles exhibiting those marks and be confused about the origin of the products. *See Sazerac Co. v. Skyy Spirits Inc*., 1995 WL 814250, at *2 (E.D. La. Dec. 19, 1995), aff'd sub nom. *Sazerac Co. v. SKYY Spirits, Inc*., 95 F.3d 53 (5th Cir. 1996) (rejecting trade dress claims because the two bottles in question included each company's tradename and trademarks making it unlikely that any consumer would be confused).  There is simply no plausible way for Jot to plead confusion where the purported trade dress is so fundamentally dissimilar.  *Motherlode Provisions, LLC*, 2017 WL 11547020, at *5.

There are also no factual allegations establishing any likelihood of confusion arising from the websites or any of their components.  Jot avoids pleading facts about or including the content of its website because the absence of similarity is obvious.  (*Compare* https://oneby.co to https://jot.co; Weir Aff. Exs. 1–4).  Instead, Jot relies on conclusory assertions of "confusion"

with no facts supporting the claim or the six confusion factors.

For the few specific website elements Jot does identify, any claimed confusion again cannot meet the plausibility standard.  No consumer seeing a "Buy Now" button on OneBy's website would be confused into believing they were really buying Jot's products, and no facts are alleged explaining why they would be.  The same can be said for the column format, yellow background and volume price discounts that Jot complains about.  (FAC ¶ 39c).  Jot does not have a monopoly on the use of a yellow background or a button that says "Buy Now."  No consumer associates those items with any particular product, let alone Jot's.  Moreover, as with Jot's bottle and packaging claims, the websites both prominently display the respective parties' trademarks which eliminates the potential for any consumer confusion.  Jot's trade dress claims should be dismissed for this additional reason.

C.      Jot's Lanham Act and Common Law Unfair Competition Claims Fail

Relying on exactly the same underlying facts as its trade dress claims, Jot claims that OneBy also violated the same section 43(a) of the Lanham Act by falsely designating the origin of its products in a manner that is likely to cause confusion as to the origin or sponsorship of the goods.  (FAC ¶ 49).  The "unfair competition" claim is identical to Jot's trade dress infringement claim.  15 U.S.C. § 1225(a).  Since Jot has failed to plead a viable claim for trade dress infringement, its identical but separately labeled "unfair competition" claim fails as well.

The elements of common law unfair competition overlap with those of Jot's trade dress claim under the Lanham Act.  "Generally, the common-law tort of unfair competition has been limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source."  *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007).  Similar to federal trademark law, a

plaintiff must also show the public is likely to be deceived or confused.  *Id.* at 1132; *Wood v. Wood's Homes, Inc.*, 33 Colo.App. 205, 291(1974).  As discussed above, Jot has not, and cannot, plead that any of its purported trade dress has "secondary meaning such that they operate as a designation of source" or that consumers are likely to be confused.  Jot's Colorado common law claim must be dismissed.

## IV.    **CONCLUSION**

This meritless case was brought to burden a new and smaller competitor.  OneBy did not use Jot's trade dress.  This case must be dismissed.  And, since further amendment would be futile, the dismissal should be without leave to amend and with prejudice.

Dated: July 15, 2021                                   MANATT, PHELPS & PHILLIPS, LLP

                                    By:  /s/ *Charles E. Weir*
                                    Charles E. Weir
                                    2049 Century Park East, Suite 1700
                                    Los Angeles, CA 90067
                                    Telephone:  (310) 312-4000
                                    Facsimile:  (310) 312-4224
                                    Cweir@Manatt.com

                                    Attorneys for Defendant,
                                    OneBy Coffee, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01364

JOT LABS, LLC,

       Plaintiff,

v.

ONEBY COFFEE, INC.

       Defendant.

---

**CERTIFICATION REGARDING DEFENDANT ONEBY COFFEE, INC.'S**

**MOTION TO DISMISS JOT LABS, LLC'S FIRST AMENDED COMPLAINT**

---

      I confirm that I have conferred with the opposing counsel in good faith regarding this motion, as required under local rule D.C.COLO.LCivR 7.1(a).

Dated: July 15, 2021               MANATT, PHELPS & PHILLIPS, LLP

                                 By:  /s/ *Charles E. Weir*
                                 Charles E. Weir
                                 2049 Century Park East, Suite 1700
                                 Los Angeles, CA 90067
                                 Telephone:  (310) 312-4000
                                 Facsimile:  (310) 312-4224
                                 Cweir@Manatt.com

                                 Attorneys for Defendant,
                                 OneBy Coffee, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July, 2021, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such filing to

the following:

James Juo
THOMAS P. HOWARD, LLC
842 W. South Boulder Rd., Suite 100
Louisville, CO  80027
Telephone: (303) 665-9845
Facsimile: (303) 665-9847
Email: JJuo@thowardlaw.com

Sean M. Casey (Bar No. CA 179641)
(Application for Admission Pending)
BUCHALTER, A Professional Corporation
18400 Von Karman Ave., Suite 800
Irvine, CA 92612-0514
Tel.: (949) 224-6456
Fax: (949) 720-0182
SCasey@Buchalter.com

Thomas J. Speiss, III (Bar No. CA 200949)
(Application for Admission Pending)
BUCHALTER, A Professional Corporation
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Cell: (310) 490-3373
Fax: (213) 630-5836
TSpeiss@Buchalter.com

*Counsel for Plaintiff*

Dated:  July 15, 2021
Los Angeles, California

/s/ Charles E. Weir
Charles E. Weir (Bar No. CA 211091)
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700

Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile:  (310) 312-4224
Email: cweir@manatt.com
*Counsel for Defendant*